TOOKEY, J.
*575 Defendant appeals a judgment of conviction for eight counts of second-degree sexual abuse (Counts 1, 2, 4, 6, 9, 11, 13, and 14), one count of third-degree sexual abuse (Count 3), four counts of third-degree rape (Counts 5, 8, 10, and 12), and one count of third-degree sodomy (Count 7). On appeal, defendant raises five assignments of error. In his first assignment, defendant argues that the trial court plainly erred by failing to strike, sua sponte , "a police detective's expression of gratitude for the alleged victim's 'honesty.' " In his second through fifth assignments, defendant contends that the trial court plainly erred by failing to merge a number of the jury's guilty verdicts. For the reasons that follow, we reject defendant's first assignment. We conclude, however, that defendant's merger arguments are well taken. We therefore reverse and remand for merger of the affected convictions, and remand the entire case for resentencing.
The facts are few and undisputed. Defendant, who was then 26 years old, met the victim, who was 14 years old. Over the course of several months, defendant engaged in a sexual relationship with the victim. Eventually, the victim's parents became aware of defendant's sexual relationship with their daughter, and they confronted defendant. After defendant acknowledged that he had been engaged in an inappropriate sexual relationship with the victim, the victim's parents contacted the police. At first, the victim refused to talk with the police or to cooperate in any way because she did not want defendant to get arrested, but approximately a year later she disclosed the details to Detective Harris.
The victim was under a lot of "stress" and "very emotional" when Harris interviewed the victim at the Children's Advocacy Center. Approximately 70 minutes into that interview, the victim became "really upset" when Harris asked why it took the victim over a year to report the abuse, and the following colloquy ensued:
"[Victim]: I'm dealing with things I wish I didn't have to deal with.
"* * * * *
"[Victim]: I tried to ignore it a lot.
*576 "* * * * *
"[Victim]: But I've been thinking a lot lately and I'm looking at my friends and how they're being able to be normal teenagers.
"* * * * *
"[Victim]: And I'm not able to be like them.
"[Harris]: Okay. Okay.
"[Victim]: And it's hard because I want-I wish I never would have done that.
"* * * * *
"[Victim]: Because I'm dealing with things I wish I never had to deal with.
"[Harris]: Okay. Okay. I understand that.
*423 "[Victim]: I'm sorry.
"[Harris]: That's alright. Thank you for your honesty. And thank you for talking to me. I really appreciate it. I know it's hard to talk to a stranger. So, I really appreciate you coming in and talking to me.
"Can you think of anything that we haven't talked about that you think would be important for me to know?"
The interview continued for another 20 minutes, and the victim disclosed more details about her relationship with defendant. Following further investigation, defendant was indicted for eight counts of second-degree sexual abuse, ORS 163.425, one count of third-degree sexual abuse, ORS 163.415, four counts of third-degree rape, ORS 163.355, and one count of third-degree sodomy, ORS 163.385.
Before trial, defendant filed a motion in limine to exclude evidence and requested a hearing to determine the admissibility of certain statements contained in the recorded interviews with defendant and the victim. During the pretrial hearing on defendant's motion, defendant sought to exclude statements made by Harris during the recorded interview with defendant, including a statement to defendant that Harris "thought [the victim] was an honest girl," as impermissible comments on credibility. The trial court agreed with defendant and excluded portions of the *577 interview under the vouching rule. Defendant did not object to the above-quoted statement from Harris's interview with the victim, in which Harris said, "thank you for your honesty," to the victim. Following a jury trial, defendant was convicted of the 14 counts alleged in the indictment.
On appeal, in his first assignment of error, defendant argues that the trial court plainly erred by failing to strike, sua sponte , the "police detective's expression of gratitude for the alleged victim's 'honesty.' " The state contends that "[t]he trial court did not err, much less plainly err, in failing sua sponte to strike [the] police officer's out-of-court statement." We agree with the state.
"[A]n out-of-court statement about the credibility of a witness * * * is subject to the categorical prohibition against vouching evidence only if the statement is offered for the truth of the credibility opinion that it expresses." State v. Chandler , 360 Or. 323, 334, 380 P.3d 932 (2016). However, as noted above, defendant argues that the trial court plainly erred by failing to strike, sua sponte , the "police detective's expression of gratitude for the alleged victim's 'honesty.' " We may review an unpreserved error under ORAP 5.45 if certain conditions are met:
"(1) the claimed error is an error of law, (2) the claimed error is obvious, not reasonably in dispute, and (3) it appears on the face of the record, i.e. , the reviewing court need not go outside the record to identify the error or choose between competing inferences, and the facts constituting the error are irrefutable."
State v. Gornick , 340 Or. 160, 166, 130 P.3d 780 (2006) (citations, internal quotation marks, brackets, and ellipses omitted). "When determining whether a trial court plainly erred in failing to strike, sua sponte , testimony as an impermissible comment on the credibility of a witness, we focus on whether it was beyond dispute that the court had a duty to prevent that testimony." State v. Deleon , 288 Or. App. 850, 851, 407 P.3d 931 (2017) (citation and internal quotation marks omitted). Therefore, we must determine whether it is beyond dispute that Harris's out-of-court statement thanking the victim for her honesty was offered only for the truth of the credibility opinion that it expresses.
*578 Defendant acknowledges that "it is not clear that the state offered the comment for the purpose of bolstering [the victim's] credibility." We agree. The challenged statement provided relevant context for the victim's emotional reaction to the question of why it took her so long to report the abuse, and was part of a larger statement that may have been intended to console the victim so Harris could elicit more information.[1] Immediately after Harris empathized with the victim and *424 thanked the victim for being forthcoming, Harris asked, "Can you think of anything that we haven't talked about that you think would be important for me to know?" See Chandler , 360 Or. at 335-36, 380 P.3d 932 (detective's "credibility statements made during the interview were admitted not to prove that [the] defendant was untruthful or that the victims were truthful, but rather as context for the responses that those statements elicited from [the] defendant"); State v. Codon , 282 Or. App. 165, 173-74, 386 P.3d 45 (2016), rev. den. , 361 Or. 240, 392 P.3d 324 (2017) (concluding that the trial court did not err in admitting officer's out-of-court statement regarding the defendant's credibility because it was part of the larger conversation and was made to "elicit more forthcoming responses"). Additionally, the state did not highlight the statement or use the statement to bolster the victim's credibility at trial. See Chandler , 360 Or. at 335, 380 P.3d 932 (noting that the prosecutor did not use the statements "to bolster the victim's credibility or to undermine [the] defendant's"); Codon , 282 Or. App. at 174, 386 P.3d 45 (noting the lack of emphasis placed upon the credibility assessments). For those reasons, we conclude that it is not "obvious" that Harris's out-of-court statement was offered only for the truth of the credibility opinion that it expresses.[2] Therefore, the trial court did not plainly err in failing to strike it. *579 We now turn to defendant's second through fifth assignments, in which defendant contends that the trial court plainly erred by failing to merge a number of the jury's guilty verdicts for second-degree sexual abuse and third-degree rape. The state concedes, and we agree, that "it was plain error for the court to enter separate convictions for second-degree sex abuse and third-degree rape for each instance of sexual intercourse between defendant and the victim."
Under ORS 161.067(1), a court may enter separate convictions when "the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not." In this case, Counts 6, 9, 11, and 13 of the indictment alleged that defendant committed second-degree sexual abuse when he "unlawfully and knowingly subject[ed] [the victim] to sexual intercourse, the said victim not consenting thereto in that said victim was under 18, and thus incapable of consent." Counts 5, 8, 10, and 12 of the indictment alleged that defendant committed third-degree rape when he "unlawfully and knowingly engage[d] in sexual intercourse with [the victim], a child under 16 years of age." As we explained in State v. Breshears , 281 Or. App. 552, 554-59, 383 P.3d 345 (2016), in that circumstance, the guilty verdicts for third-degree rape and second-degree sexual abuse that are based on the same conduct must merge into a conviction for second-degree sexual abuse because "proof of the elements of third-degree rape will necessarily prove the elements of second-degree sexual abuse."[3]
*580 Thus, we conclude that the trial court plainly erred when it entered separate convictions *425 for each of the second-degree sexual abuse counts and each of the third-degree rape counts that were based on the same conduct.[4] We further conclude that it is appropriate to exercise our discretion to correct the error because "the additional convictions * * * misstate the extent of the criminal conduct" and "the state does not have an interest in convicting a defendant twice for the same crime." State v. Lantz , 290 Or. App. 841, 845, 417 P.3d 568 (2018).
Reversed and remanded for merger consistent with this opinion; remanded for resentencing; otherwise affirmed.

To better understand the context in which the challenged statement was made, we have reviewed the state's exhibit eight, the videotaped interview with the victim. The victim became visibly upset and started crying during that portion of the interview.

We also note that it is plausible that defendant made a conscious decision to not object to the challenged statement because defendant objected to numerous other statements by Harris as impermissible comments on credibility. See State v. Macias , 282 Or. App. 473, 481-82, 386 P.3d 186 (2016) (concluding that the trial court did not err in failing to strike testimony sua sponte because it was plausible that the defendant made a decision to not object to it when the "defendant objected to a number of other statements by witnesses as impermissible comments on credibility"). If defendant had objected to the statement, the state could have clarified its purpose or agreed to redact the statement as the state had done with the other statements to which defendant had objected. Furthermore, the court instructed the jury that there "is a prohibition for one witness to opine or give an opinion on the credibility of another witness." See Codon , 282 Or. App. at 173 n. 6, 386 P.3d 45 (noting that the trial court gave a limiting instruction that directed the jury not to regard the officer's credibility opinion for the truth of the statement contained therein).

In this case, the crime-seriousness classification for the second-degree sexual abuse charges is 7. OAR 213-017-0005(6). The crime-seriousness classification for the third-degree rape charges is 6. OAR 213-017-0006(21). Accordingly, the guilty verdicts for third-degree rape and second-degree sexual abuse merge into a conviction for second-degree sexual abuse. See Breshears , 281 Or. App. at 559 n. 4, 383 P.3d 345 (when guilty verdicts merge, the conviction is entered on the more serious offense).

Here, Counts 5 and 6 merge because they are based on the same conduct that occurred on March 14, 2014, Counts 8 and 9 merge because they are based on the same conduct that occurred on March 16, 2014, Counts 10 and 11 merge because they are based on the same conduct that occurred on March 23, 2014, and Counts 12 and 13 merge because they are based on the same conduct that occurred on April 5, 2014.